**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| STACIE ROBERTS,<br><br>              Plaintiff,<br><br>      v.<br><br>TALARIS THERAPEUTICS, INC.,<br>FRANCOIS NADER, SANDIP AGARWALA,<br>SUZANNE ILDSTAD, GEOFF MACKAY,<br>MARK MCDADE, GAURAV SHAH, KAREN<br>SMITH, and SAPNA SRIVASTAVA,<br><br>              Defendants. | ) Case No.<br>)<br>)<br>)<br>)<br>) **COMPLAINT FOR**<br>) **VIOLATIONS OF THE**<br>) **FEDERAL SECURITIES LAWS**<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Stacie Roberts ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Talaris Therapeutics, Inc. ("Talaris" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Tourmaline Bio, Inc. ("Tourmaline").[1]

2. On June 22, 2023, Talaris, Talaris' wholly owned subsidiary Terrain Merger

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Sub, Inc. entered into an Agreement and Plan of Merger (the "Merger Agreement") with Tourmaline. The Merger Agreement provides that Talaris and Tourmaline will combine, with (a) Tourmaline common stock converted into the right to receive shares of Talaris common stock equal to the Exchange Ratio (as defined in the Merger Agreement); and (b) Talaris' stockholders receiving a special cash dividend of up to approximately $64.8 million.[2]

3.     The Company's corporate directors subsequently authorized the September 15, 2023, filing of a materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC.[3] The Prospectus, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[4]

---

[2] The Company's stockholders will own approximately 21.7% of the combined company once the Proposed Transaction has closed. Tourmaline's current stockholders will own approximately 59.0% of the combined company. The remaining 19.3% of the combined company will be owned by the investors issued shares of Tourmaline common stock in connection with Tourmaline's pre-closing financing.

[3] The Merger Agreement requires the Company to issue additional shares of its common stock (the "Share Issuance"). Nasdaq listing rules require the Company to secure stockholder approval before issuing twenty percent or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company. The Proposed Transaction is therefore also contingent upon Talaris stockholders voting to approve the proposed Share Issuance.

[4] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for October 17, 2023.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Talaris common stock.

10. Defendant Talaris is a Delaware corporation with its principal executive offices located at 93 Worcester St., Wellesley, Massachusetts 02481. Talaris' shares trade on the Nasdaq Global Market under the ticker symbol "TALS." Talaris is a cell therapy company that was focused on developing an innovative method of allogeneic hematopoietic stem cell

transplantation ("allo-HSCT") that it believes has the potential to transform the standard of care in solid organ transplantation, certain severe autoimmune diseases and certain severe blood, immune and metabolic disorders. FCR001, which was central to Talaris' therapeutic approach, is a novel allogeneic cell therapy comprised of stem and immune cells procured from a healthy donor, who is also the organ donor in the case of organ transplantation. FCR001 was studied in Talaris' FREEDOM-1, FREEDOM-2 and FREEDOM-3 clinical trials. Talaris discontinued its FREEDOM-1 and FREEDOM-2 clinical trials in February 2023 and paused enrollment in its FREEDOM-3 trial in March 2023. On July 1, 2023, Talaris entered into an asset purchase agreement with ImmunoFree, Inc., pursuant to which Talaris sold certain clinical data and intellectual property related to FCR001 for approximately $2.2 million.

11. Defendant Francois Nader is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Sandip Agarwala is and has been a director of the Company at all times relevant hereto.

13. Defendant Suzanne Ildstad is the Founder of the Company and is and has been a director of the Company at all times relevant hereto.

14. Defendant Geoff MacKay is and has been a director of the Company at all times relevant hereto.

15. Defendant Mark McDade is and has been a director of the Company at all times relevant hereto.

16. Defendant Gaurav Shah is and has been a director of the Company at all times relevant hereto.

17. Defendant Karen Smith is and has been a director of the Company at all times relevant hereto.

18. Defendant Sapna Srivastava is and has been a director of the Company at all times relevant hereto.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On June 22, 2023, Tourmaline and the Company jointly announced in relevant part:

> BOSTON and NEW YORK – June 22, 2023 – Talaris Therapeutics, Inc. (Nasdaq: TALS) ("Talaris") and Tourmaline Bio, Inc. ("Tourmaline"), a late-stage clinical biotechnology company developing transformative medicines to dramatically improve the lives of patients with life-altering immune diseases, today announced that the companies have entered into a definitive agreement under which Tourmaline will combine with Talaris in an all-stock transaction (the "Merger"). The combined company will focus on advancing Tourmaline's lead program, TOUR006, a potentially best-in-class anti-IL-6 antibody, for the treatment of thyroid eye disease (TED) and atherosclerotic cardiovascular disease (ASCVD). Upon completion of the Merger, the combined company will operate under the name Tourmaline Bio, Inc. and trade on the Nasdaq under the ticker symbol "TRML." In addition, Talaris anticipates making a cash dividend of up to approximately $64.8 million to its stockholders prior to the closing of the Merger.
>
> In support of the Merger, Tourmaline has entered into an agreement for a $75 million private placement with a syndicate of new and existing institutional life sciences investors including Acuta Capital Partners, Affinity Asset Advisors, Braidwell LP, Cowen Healthcare Investments, Deep Track Capital, Great Point Partners, LLC, KVP Capital, Logos Capital, Paradigm BioCapital, Qiming Venture Partners USA, RA Capital Management, LP, StemPoint Capital LP, TCGX, Vivo Capital, and other undisclosed investors. Tourmaline previously completed a $112 million Series A financing in 2023 that was co-led by Deep Track Capital, Cowen Healthcare Investments, and TCGX. Tourmaline was

founded in September 2021 and initially financed in May 2022 by Hydra, KVP Capital, Petrichor, and QVT Family Office.

"We are thrilled to be entering into this transaction with Talaris," said Sandeep Kulkarni, MD, Chief Executive Officer of Tourmaline. "We have assembled a world-class team with deep experience developing antibodies for immune disorders and are now on the verge of beginning our Phase 2 development campaign in multiple indications. We believe that TOUR006 has best-in-class potential and could be a transformative treatment option for millions of patients suffering from immune disorders. This merger and the support from leading life sciences investors will allow us to accelerate our development plans in TED, heart disease, and potentially other indications."

"The Talaris Board of Directors conducted a review of strategic alternatives to identify paths to provide value to our stockholders. We believe the transaction we are announcing today with Tourmaline, together with the expected cash dividend of up to approximately $64.8 million, presents a compelling opportunity for our shareholders," said Mary Kay Fenton, Interim Chief Executive Officer of Talaris. "TOUR006 is a promising clinical asset with near-term, value-creating milestone opportunities. We look forward to its future success."

Tourmaline's lead program, TOUR006, is an anti-IL-6 antibody with best-in-class properties including high binding affinity to IL-6 and a naturally long half-life which potentially enable delivery as a low-volume, infrequently administered, subcutaneous injection. Tourmaline's strategy is to develop TOUR006 in diseases characterized by inflammation and autoantibodies, where IL-6 pathway inhibitors have been underexplored despite compelling signals of clinical benefit. Following this strategy, Tourmaline's lead indication is TED, also known as Graves' ophthalmopathy, an autoimmune disease characterized by inflammation and disfigurement around the eye which can be sight-threatening in severe cases. Off-label use of IL-6 pathway inhibitors in TED has been well-documented in literature demonstrating strong evidence of the ability of such inhibitors to reduce inflammation, eye-bulging, and key biomarkers such as pathogenic autoantibodies. Tourmaline plans to initiate a Phase 2b trial of TOUR006 for the treatment of TED in the third quarter of 2023. The planned second indication for TOUR006 is ASCVD, which continues to be a leading cause of death globally despite the wide availability of oral therapies. IL-6 has been implicated as a promising drug target for addressing ASCVD by over two decades of clinical, genetic, and experimental research. Tourmaline plans to initiate a Phase 2 trial of TOUR006 in ASCVD in 2024. Tourmaline plans to seek additional indication opportunities for TOUR006 among the wide array of diseases where IL-6 inhibition has been validated. TOUR006 was licensed by Tourmaline from Pfizer Inc. in May 2022. Pfizer had completed

Phase 1 and Phase 2 trials in other indications with a safety profile consistent with the anti-IL-6 and anti-IL-6R class.

**About the Merger**

Under the terms of the merger agreement, Tourmaline stockholders (including Tourmaline stockholders issued shares in the private placement) will receive shares of Talaris common stock upon the consummation of the Merger. In addition to their shares of Talaris common stock, Talaris stockholders will participate in a cash dividend of up to approximately $64.8 million in connection with, and prior to, the Merger.

Tourmaline stockholders immediately prior to the Merger (including Tourmaline stockholders issued shares in the private placement) are expected to own approximately 78.7% of the combined company and Talaris stockholders immediately prior to the Merger are expected to own approximately 21.3% of the combined company, each on a fully diluted basis. The percentage of the combined company that each company's former stockholders are expected to own may be adjusted based on Talaris' net cash at closing (subject to a collar) and the proceeds from the sale of certain of Talaris' legacy assets prior to closing.

The Merger has been unanimously approved by the Board of Directors of both companies and both Boards of Directors have recommended that their respective stockholders approve the matters regarding the Merger. The Merger is expected to close in the fourth quarter of 2023, subject to approvals by stockholders of each company and other customary closing conditions.

In connection with the Merger, directors, officers and certain stockholders of each of Tourmaline and Talaris have executed support agreements, pursuant to the terms of which they have agreed to vote all of their shares of capital stock in favor of the Merger or the issuance of Talaris shares in the Merger, as applicable.

Jefferies, Piper Sandler, Guggenheim Securities, and Truist Securities are serving as placement agents to Tourmaline in connection with the private placement and Cooley LLP is serving as legal counsel to Tourmaline in connection with the private placement and the Merger. SVB Securities is serving as exclusive financial advisor to Talaris and Goodwin Procter LLP is serving as legal counsel to Talaris.

**Management and Organization**

Following the Merger, the combined company will be led by current members of the Tourmaline leadership team, including:

- Sandeep Kulkarni, MD, Chief Executive Officer

- Yung Chyung, MD, Chief Medical Officer

- Brad Middlekauff, JD, Chief Business Officer and General Counsel

- Susan Dana Jones, PhD, Chief Technology Officer

- Ryan Iarrobino, Senior Vice President, Product Development

- Kevin Johnson, PhD, Chief Regulatory Officer

- Dora Rau, Senior Vice President, Head of Quality

The merger agreement provides that the Board of Directors of the combined company will be composed of seven board members; five board members, including the CEO of Tourmaline, will be named by Tourmaline and two board members will be named by Talaris.

**The Materially Incomplete and Misleading Prospectus**

21. The Board caused to be filed the materially incomplete and misleading Prospectus with the SEC on September 15, 2023  The Prospectus, which recommends that Talaris stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) Tourmaline's and the Company's financial forecasts; (b) the financial analyses underlying the fairness opinion provided by the Company's financial advisor, Leerink Partners LLC ("Leerink"); (c) the potential conflicts of interest faced by Leerink; and (d) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Company's and Tourmaline's Financial Forecasts*

22. The Prospectus fails to disclose material information concerning the Company's financial forecasts, as well as those for Tourmaline.

23. With respect to the Company, the Prospectus fails to disclose the expense

8

forecasts and other internal information of Talaris relied upon by Leerink for its financial analyses.[5]

24. The Proxy Statement also fails to disclose the line items underlying the Tourmaline's forecasted: (a) Net Income; and (b) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Leerink*

25. The Prospectus fails to disclose material information concerning the financial analyses prepared by Leerink

26. With respect to the *Valuation Analysis—Discounted Cash Flow* performed by Leerink, the Prospectus fails to disclose any terminal values calculated in connection with the analysis, or Leerink's basis for not calculating one.

27. With respect to the *Additional Factors Observed by Leerink Partners—Tourmaline Valuation Analysis—Selected Public Companies*, the Prospectus fails to disclose the inputs and assumptions underlying the twenty percent illiquidity discount Leerink utilized in the analysis.

*Material Misrepresentations and/or Omissions Concerning Leerink's Conflicts of Interest*

28. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by Leerink, including whether Leerink has performed any services for Tourmaline or its affiliates in the two years prior to rendering its fairness opinion and, if so, any fees received in connection with such services.

---

[5] *See* Prospectus at 177.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

29. With respect to the stockholder of Talaris that held substantial shares of Talaris common stock (the "Investor") that Tourmaline requested execute a support agreement in favor of the Proposed Transaction (*see id.* at 164), the Prospectus fails to disclose: (a) the identity of the Investor; (b) the amount of the Investor's ownership in the Company; and (c) whether the Investor is affiliated with any of the Company's directors or executive officers and/or Tourmaline.

30. The omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Background of the Merger," and Opinion of Talaris' Financial Advisor" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act.

31. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Talaris**

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made,

omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Talaris is liable as the issuer of these statements.

34. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

35. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

37. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth

herein.

41. The Individual Defendants acted as controlling persons of Talaris within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Talaris and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

44. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 27, 2023                    **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*